UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. BANK TRUST, N.A., as Trustee for
LSF9 Master Participation Trust,

                              Plaintiff,

    -against-                             1:15-CV-1480 (LEK/DJS)

OWEN MONROE, individually and as
surviving spouse of Phyllis Monroe,

                              Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Presently before the Court is plaintiff U.S. Bank Trust, N.A.'s motion for default judgment, seeking the foreclosure and sale of real property owned by defendant Owen Monroe. Dkt. No. 12 ("Motion"); see also Dkt. No. 13 ("Attorney Affidavit"). For the following reasons, U.S. Bank's Motion is denied and the complaint is dismissed for lack of subject matter jurisdiction.

**II.    BACKGROUND**

On December 14, 2015, U.S. Bank—through its attorneys, Gross Polowy, LLC—filed its complaint in this action, alleging nonpayment of a mortgage by Monroe. Dkt. No. 1 ("Complaint") ¶ 11. U.S. Bank seeks a judgment for the outstanding amount under the loan, along with the foreclosure and sale of Monroe's property to satisfy this debt. Id. ¶¶ 1, 11–13.

U.S. Bank asserts subject matter jurisdiction based on diversity of citizenship, claiming that it is a citizen of Delaware while Monroe is a citizen of New York. Id. ¶¶ 2–3, 6. In support of its own citizenship, U.S. Bank alleges that it "is a national association with its principal place of

business [in] . . . Wilmington, DE." Id. ¶ 2. U.S. Bank brings this case on behalf of the LSF9 Master Participation Trust, for which it serves as trustee. Id. ¶ 10; see also id. ¶ 2 ("Plaintiff is the owner and holder of the subject Note and Mortgage or has been delegated authority to institute this Mortgage foreclosure action by the owner and holder of the subject Note and Mortgage."); id. Schedule A (noting assignment to the LSF9 Master Participation Trust, and then to U.S. Bank as its trustee, in endorsements to the note). The Complaint does not contain any details concerning U.S. Bank's role as trustee or the powers it has over the trust property (including the mortgage here).

Monroe failed to appear in this action, and on February 2, 2016, the Clerk of the Court noted his default. Dkt. No. 8. On March 17, 2016, U.S. Bank moved for default judgment. Mot. The Motion was supported by an Attorney Affidavit, which included a copy of the Complaint, a proposed judgment, the entry of default, calculations of damages and fees, and sworn statements attesting that Monroe was properly served but nonetheless failed to appear. Attorney Aff. ¶¶ 3, 7, 9; Dkt. Nos. 13-1 to -9.[1] This affidavit did not include sworn statements that Monroe is not an

---

[1] Though not reached here due to the Motion's procedural failures, the Court also takes note of Gross Polowy's attorney's fee declaration, which states that "[b]ecause this office charges a flat fee for foreclosure work, individual time sheets are not maintained." Dkt. No. 13-6 ("Fees Affidavit") ¶ 4. In a 2015 Eastern District case decided before the Complaint here was filed, Gross Polowy was "advised that its failure to keep and submit contemporaneous time records in any future suits in which they seek attorney fees . . . will result in a denial of any fee award." OneWest Bank, N.A. v. Denham, No. 14-CV-5529, 2015 WL 5562980, at *13 (E.D.N.Y. Aug. 31, 2015); see also U.S. Bank Tr., N.A. v. Dingman, No. 16-CV-1384, 2016 WL 6902480, at *6 & n.16 (S.D.N.Y. Nov. 22, 2016) (denying Gross Polowy attorney's fees for this reason); OneWest Bank, N.A. v. Vaval, No. 14-CV-3437, 2016 WL 3945342, at *4 (E.D.N.Y. July 19, 2016) (same); CIT Bank, N.A. v. Dambra, No. 14-CV-3951, 2015 WL 7422348, at *8–9 (E.D.N.Y. Sept. 25, 2015) (same). Since "courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done,'" Denham, 2015 WL 5562980,

infant or otherwise incompetent, that he is not in the military service, that the amount sought "is justly due and owing," "that no part has been paid," and that the "disbursements sought to be taxed" either have been or necessarily will be made. L.R. 55.2(a).[2]

## III.   LEGAL STANDARD

### A.  Subject Matter Jurisdiction

A fundamental predicate to judgment in the federal courts is the existence of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. E.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party asserting subject matter jurisdiction carries the burden of proving its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113; Augienello v. FDIC, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004). This is true even on a motion for default judgment, since the principle that a default deems the well-pleaded allegations

---

at *10 (quoting OneWest Bank, N.A. v. Cole, No. 14-CV-3078, 2015 WL 4429014, at *6 (E.D.N.Y. July 17, 2015) (also denying Gross Polowy attorney's fees)), U.S. Bank and its counsel are cautioned not to include requests for attorney's fees in any subsequent motion for default judgment that are prohibited by Second Circuit law.

   [2] While some of these issues were discussed elsewhere by U.S. Bank's counsel, e.g., Dkt. No. 7, they were not included in the affidavit filed in support of default judgment.

of the complaint to be admitted is inapplicable when a court doubts the existence of subject matter jurisdiction. Transatlantic Marine, 109 F.3d at 108.

### B. Default Judgment

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." Elec. Creations Corp. v. Gigahertz, Inc., No. 12-CV-1423, 2013 WL 3229125, at *3 (N.D.N.Y. June 25, 2013) (quoting Robertson v. Doe, No. 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" Id. (alteration in original) (quoting Robertson, 2008 WL 2519894, at *3). Second, under Federal Rule of Civil Procedure 55(b)(2), "the party seeking default judgment is required to present its application for entry of judgment to the court." Id. (quoting Robertson, 2008 WL 2519894, at *3).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); accord, e.g., Bravado Int'l, 655 F. Supp. 2d at 190. "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." United States v. Hill, No. 12-CV-1413, 2013 WL 474535, at *1 (N.D.N.Y. Feb. 7, 2013) (alteration in

original) (quoting Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008)). "The burden is on the plaintiff to establish its entitlement to recovery." Bravado Int'l, 655 F. Supp. 2d at 189. "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" Id. at 190 (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988)).

Under Local Rule 55.2(b), the moving party must submit with its motion for default judgment: (1) a clerk's certificate of entry of default, (2) a proposed form of default judgment, (3) a copy of the pleading to which no response has been made, and (4) an affidavit. L.R. 55.2(b). The affidavit must set forth that: (1) the party against whom judgment is sought is not an infant, incompetent, or in military service; (2) the party against whom judgment is sought "has defaulted in appearance in the action"; (3) service was properly effected under Federal Rule of Civil Procedure 4; (4) the amount sought "is justly due and owing," and no part has been paid; and (5) "[t]he disbursements sought to be taxed have been made in the action or will necessarily be made or incurred." L.R. 55.2(a).

**IV.     DISCUSSION**

In the past year, U.S. Bank's attorneys—Gross Polowy—have repeatedly failed to secure default judgments in similar foreclosure cases before this Court. E.g., U.S. Bank Tr., N.A. v. Dupre, No. 15-CV-558, 2016 WL 5107123 (N.D.N.Y. Sept. 20, 2016) (Kahn, J.); Nationstar Mortg. LLC v. Moody, No. 16-CV-279, 2016 WL 4203514 (N.D.N.Y. Aug. 9, 2016) (Kahn, J.); Nationstar Mortg. LLC v. Pignataro, No. 15-CV-1041, 2016 WL 3647876 (N.D.N.Y. July 1, 2016) (Kahn, J.); cf. Ditech Fin. LLC v. Sterly, No. 15-CV-1455, 2016 WL 7429439, at *4 (N.D.N.Y. Dec. 23, 2016) (denying a motion for default judgment due to a defective notice of

pendency); OneWest Bank, N.A. v. Conklin, No. 14-CV-1249, 2015 WL 3646231, at *4 (N.D.N.Y. June 10, 2015) (same). In each case, Gross Polowy's motion was denied for one of two reasons: either the complaint failed to sufficiently allege subject matter jurisdiction, e.g., Dupre, 2016 WL 5107123, at *2–5, or the motion for default judgment failed to meet the requirements of the Court's Local Rules, e.g., Moody, 2016 WL 4203514, at *2. Here, both of these failures are present.

### A. Lack of Subject Matter Jurisdiction

"A federal court's jurisdiction must clearly appear from the face of [the] complaint . . . ." Verosol USA, Inc. v. Fla. Shades, Inc., No. 91-CV-6263, 1992 WL 696643, at *1 (S.D.N.Y. Sept. 17, 1992) (quoting Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972)); accord Atlas Supply Co. v. Transcon Lines Inc., No. 83-CV-5622, 1984 WL 1202, at *1 (S.D.N.Y. Oct. 29, 1984). "And when a complaint fails to plead subject matter jurisdiction, the Court is obligated to dismiss it *sua sponte*." Receivables Exch., LLC v. Hotton, No. 11-CV-292, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (citing Fed. R. Civ. P. 12(h)(3)).

U.S. Bank asserts jurisdiction based on diversity of citizenship, Compl. ¶ 6 (citing 28 U.S.C. § 1332), which generally requires each defendant to be a citizen of a different state from each plaintiff, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 67–68 (1996); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373–74 (1978). While U.S. Bank alleges that Monroe is a citizen of New York, Compl ¶ 3, the only allegation in the Complaint concerning U.S. Bank's citizenship is that "its principal place of business" is in Wilmington, Delaware, id. ¶ 2. The Complaint also includes no allegations concerning U.S. Bank's ability to proceed under its own

citizenship, despite bringing this case on behalf of the "LSF9 Master Participation Trust." Compl.

The problems here were extensively discussed by the Court in U.S. Bank Trust, N.A. v. Dupre, 2016 WL 5107123, one of the cases discussed above in which U.S. Bank was also represented by Gross Polowy. Both of the mistakes made by U.S. Bank there concerning subject matter jurisdiction also appear in this case. Specifically, U.S. Bank has not properly established its citizenship under the rules governing national banking associations, id. at *3, and has failed to show that its citizenship alone is sufficient despite bringing this case on behalf of a trust, id. at *3–4.

*1. Citizenship of a National Banking Association*

National banking associations, unlike corporations or other artificial entities, are not chartered by any particular state. Wachovia Bank v. Schmidt, 546 U.S. 303, 306 (2006). Instead, they are chartered by the Office of the Comptroller of the Currency, a part of the U.S. Treasury Department. Id. Because these national banks fit uneasily within the general diversity jurisdiction statute, Congress adopted a rule especially for them, which states that "national banking associations shall . . . be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. But what did it mean by "located?"

In Wachovia Bank v. Schmidt, the Supreme Court answered this question, finding that a national bank is located "in the State designated in its articles of association as its main office." 546 U.S. at 318. "As the Court noted, '[a] national bank, on formation, must designate, in its organization certificate and articles of association, the "place where its operations of discount and deposit are to be carried on."' It is this 'main office' that determines . . . the bank's

citizenship for diversity purposes." Dupre, 2016 WL 5107123, at *3 (quoting Wachovia, 546 U.S. at 307 & n.1).

Here, U.S. Bank's allegation about its principal place of business is insufficient to establish diversity. Id. Indeed, the Second Circuit has expressly held that the principal place of business is not to be considered when determining the citizenship of a national banking association. OneWest Bank, N.A. v. Melina, 827 F.3d 214, 218–21 (2d Cir. 2016) (per curiam).[3] Instead, "a national bank is a citizen only of the state listed in its articles of association as its main office." Id. at 219. Because U.S. Bank has failed to properly allege its own citizenship, it has failed to show the Court's jurisdiction on the face of the Complaint. The Complaint must therefore be dismissed, and default judgment cannot be awarded. E.g., Receivables Exch., 2011 WL 239865, at *1.

2. *Diversity Citizenship and Trusts*

While U.S. Bank is the nominal plaintiff in this case, it is longstanding federal law that "court[s] must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980). "Where an agent acts on behalf of a principal, the principal, rather than the agent, has been held to be the real and substantial party to the controversy. As a result, it is the citizenship of the principal—not that of the agent—that controls for diversity purposes." Hilton Hotels Corp. v. Damornay Antiques, Inc., No. 99-CV-4883, 1999 WL 959371, at *2 (S.D.N.Y. Oct. 20, 1999) (citing

---

[3] Gross Polowy should be aware of this rule because they were "foreclosure counsel" for the plaintiff-appellee in Melina, 827 F.3d at 216–17, though in fairness it seems they were replaced by Hogan Lovells for both the subject matter jurisdiction issue and the subsequent appeal, id. at 216; OneWest Bank, N.A. v. Melina, No. 14-CV-5290, 2015 WL 5098635 (E.D.N.Y. Aug. 31, 2015), aff'd, 827 F.3d 214.

Airlines Reporting Corp. v. S&N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995)). At issue here is the application of this rule in lawsuits brought by a trustee on behalf of a trust.

The rule for determining the diversity citizenship of a trust (when it is the citizenship of the trust itself that matters) depends on the type of trust at issue. If the trust is a traditional trust, meaning it was established primarily for gift or estate planning purposes, courts have held it takes the citizenship of its trustees without regard to the trust's beneficiaries. E.g., Thales Alenia Space Fr. v. Thermo Funding Co., 989 F. Supp. 2d 287, 294–95, 298–300 (S.D.N.Y. 2013); see also Wang ex rel. Wong v. New Mighty U.S. Tr., 843 F.3d 487, 494–95 (D.C. Cir. 2016) (holding that traditional trusts take the citizenships of their trustees, but defining traditional trusts as "trust[s] that lack[] juridical person status"). On the other hand, as the Supreme Court recently decided in Americold Realty Trust v. Conagra Foods, Inc., business trusts—which are established as an alternative to incorporation and are intended to make a profit—take the citizenships of their beneficiaries. 136 S. Ct. 1012, 1015–17 (2016).

But what happens when a trustee sues in her own name? Is it her own citizenship that counts, or is it the trust's? In Navarro, the Court held that trustees can be the real parties in controversy—regardless of the type of trust—provided that they "are active trustees whose control over the assets held in their names is real and substantial." 446 U.S. at 465; see also Carden v. Arkoma Assocs., 494 U.S. 185, 191 (1990) (noting that, if the trustees are "active trustees whose control over the assets held in their names is real and substantial," they are brought "under the rule, 'more than 150 years' old, which permits such trustees 'to sue in their own right, without regard to the citizenship of the trust beneficiaries'" (quoting Navarro, 446

9

U.S. at 465–66)). The continued validity of this rule was endorsed by the Court in Americold. 136 S. Ct. at 1016.

Here, U.S. Bank has included no allegations concerning the type of trust at issue here, its degree of control over the trust assets, or, alternatively, the citizenships of the trust's beneficiaries. Compl. The Court is left to speculate as to these facts, and the Complaint thus fails to sufficiently allege the existence of subject matter jurisdiction. Once again, it must be dismissed.

### 3. Properly Asserting Diversity

If U.S. Bank wishes to proceed in federal court, it must, within thirty (30) days, move to amend its Complaint to address the deficiencies identified in this order. This motion to amend must be prepared in accordance with Local Rule 7.1(a)(4), which establishes the form for such a motion and lists the required papers. With that motion, to resolve the Court's doubts concerning subject matter jurisdiction, U.S. Bank must also provide its articles of association (along with any other documentation required to establish the location of its main office), the trust instrument for the LSF9 Master Participation Trust,[4] and any other documentation required to show that U.S. Bank's control over the trust assets is real and substantial. Failure to comply with this

---

[4] In the Dupre case discussed above, U.S. Bank also was instructed to file the trust instrument for the LSF8 Master Participation Trust (presumably another securitization vehicle for mortgage debt) in order to establish subject matter jurisdiction. 2016 WL 5107123, at *2. When it did file the trust instrument, "the text . . . was almost entirely redacted," and the only visible portion seemed to oppose the notion that U.S. Bank was an active trustee with real and substantial control over the trust assets. Id. at *2, *4. This failure should not be repeated here, and filing documents under seal or with redactions requires advance permission of the Court. L.R. 83.13; see also Lugosh v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–20 (2d Cir. 2006) (describing the standard for restricting public access to judicial documents).

Memorandum-Decision and Order when moving to amend the Complaint may result in the denial of the motion or sanctions. L.R. 1.1(d).

The Court strongly cautions U.S. Bank (and its attorneys, Gross Polowy) against continuing to claim federal jurisdiction in this or other lawsuits if it either lacks an arguable basis for doing so or does not wish to invest the effort required to make its case. Underpinning the rules governing diversity jurisdiction is a desire for only significant cases to be heard in federal court. See, e.g., Michael W. Lewis, Comedy or Tragedy: The Tale of Diversity Jurisdiction Removal and the One-Year Bar, 62 SMU L. Rev. 201, 204 (2009) ("The purpose of the amount in controversy requirement is the underlying belief that only cases of a certain magnitude merit federal court attention."); Jaren Casazza, Note, Valuation of Diversity Jurisdiction Claims in the Federal Courts, 104 Colum. L. Rev. 1280, 1309 (2004) ("By consistently and gradually increasing the minimum amount in controversy, Congress has indicated an express desire to allow cases of a certain financial magnitude into the federal courts."). If a case is significant enough to warrant a federal forum, properly pleading and showing jurisdiction is a reasonable price of admission. If not, the courts of New York are perfectly capable of handling a foreclosure action for nonpayment of a mortgage (perhaps even more so than a federal district court).

### B. Procedural Requirements for Default Judgment

While the dismissal of the Complaint requires the denial of U.S. Bank's motion for default judgment, the Motion could independently be denied for failure to meet the procedural requirements of the Court's Local Rules. As noted above, the Attorney Affidavit filed in support of the Motion did not include some of the items required by Local Rule 55.2, such as Monroe's competence to be sued and military service status. Cf. Moody, 2016 WL 4203514, at *2 (denying

a Gross Polowy motion for default judgment because of this issue). The Court may deny a motion because of the moving party's failure to comply with the Local Rules. E.g., Joe Hand Promotions, Inc. v. Meunier, No. 15-CV-1334, 2017 WL 56704, at *1 (N.D.N.Y. Jan. 5, 2017) (Kahn, J.); Stubby Strip, LLC v. Food Mkt. Merch., Inc., No. 15-CV-1410, 2016 WL 5374116, at *2 (N.D.N.Y. Sept. 26, 2016); United States v. Corona, No. 12-CV-105, 2013 WL 139898, at *2 (N.D.N.Y. Jan. 10, 2013) (Kahn, J.); Jackson v. Broome Cty. Corr. Facility, 194 F.R.D. 436, 437 (N.D.N.Y. 2000) (Kahn, J.).

If U.S. Bank moves to amend its Complaint, and the Court subsequently grants that motion, U.S. Bank may again seek default judgment against Monroe. Such a motion must, however, meet each of the requirements specified in the Local Rules and address all other issues discussed in this Memorandum-Decision and Order. Failure to do so may result in the denial of the motion and dismissal of this case.

**V.    CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that U.S. Bank's Complaint (Dkt. No. 1) is **DISMISSED for lack of subject matter jurisdiction**, and without prejudice to refiling in state court; and it is further

**ORDERED**, that U.S. Bank's Motion (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that if U.S. Bank wishes to continue this action in federal court, it must move to amend its Complaint with **thirty (30) days** of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that if U.S. Bank fails to file such a motion as directed in this Memorandum-Decision and Order within **thirty (30) days**, the Clerk of the Court shall close this case without further order of the Court; and it is further

**ORDERED**, that if the Court grants such a motion to amend the Complaint, U.S. Bank may then file a renewed motion for default judgment consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	March 08, 2017
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge